**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

CORETEK LICENSING LLC,

*Plaintiff*,

v.

FREECONFERENCECALL.COM, INC.,

*Defendant*.

C.A. No: 1:20-cv-01597-MN-CJB

PATENT CASE

JURY TRIAL DEMANDED

**DEFENDANT FREE CONFERENCING CORPORATION'S
OPENING BRIEF IN SUPPORT OF ITS RULE 12(b)(6)
MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

Jeremy D. Anderson (#4515)
FISH & RICHARDSON P.C.
222 Delaware Avenue, 17th Floor
Wilmington, DE 19801
(302) 652-5070 (Telephone)
(302) 652-0607 (Facsimile)
janderson@fr.com

Neil J. McNabnay
Ricardo Bonilla
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, Texas 75201
(214) 747-5070 (Telephone)
(214) 747-2091 (Facsimile)
mcnabnay@fr.com
rbonilla@fr.com

***COUNSEL FOR DEFENDANTS
FREE CONFERENCING CORPORATION***

Dated: December 22, 2020

# TABLE OF CONTENTS


I. NATURE AND STAGE OF THE PROCEEDINGS ....................1

II. SUMMARY OF THE ARGUMENT ....................1

III. STATEMENT OF THE FACTS ....................2

A. The Asserted Patents ....................2

1. The Routing Patents ....................2

2. The Extraction Patent ....................3

IV. LEGAL STANDARD ....................4

A. This case should be disposed of at the pleading stage through Rule 12(b)(6). ....................4

B. The Law of 35 U.S.C. § 101. ....................5

V. ARGUMENT ....................5

A. The Routing Patents are Invalid under 35 U.S.C. § 101 ....................6

1. Claim 1 of the '512 Patent is representative of the Routing Patent claims. ....................6

2. *Alice* Step 1: Claim 1 of the '512 Patent is directed to the abstract idea of call routing. ....................7

3. *Alice* Step 2: Claim 1 contains no inventive concept to transform the abstract idea into patent-eligible subject matter. ....................11

4. The remaining claims are ineligible for the same reasons. ....................13

B. The Extracting Patent is Invalid under 35 U.S.C. § 101 ....................14

1. Claim 1 of the Extracting Patent is representative. ....................14

2. Alice Step 1: Claim 1 of the Extracting Patent is directed to the abstract idea of storing and extracting data. ....................15

3. Alice Step 2: Claim 1 contains no inventive concept to transform the abstract idea into patent-eligible subject matter. ....................16

4. The remaining claims are ineligible for the same reasons. ....................17

C. There are no factual disputes preventing a ruling ....................18

VI. CONCLUSION ....................19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
134 S. Ct. 2347 (2014) ........ *passim*

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 4

*Athena Diagnostics, Inc. v. Mayo Collaborative Servs., LLC*,
915 F.3d 743 (Fed. Cir. 2019), cert. denied, 140 S. Ct. 855 (2020) ........ 12

*Baggage Airline Guest Servs., Inc. v. Roadie, Inc.*,
351 F. Supp. 3d 753 (D. Del. 2019) ........ 6, 14

*BASCOM Global Internet Services, Inc. v. AT&T Mobility LLC*,
827 F.3d 1341 (Fed. Cir. 2016) ........ 12

*Berkheimer v. HP Inc.*,
881 F.3d 1360 (Fed. Cir. 2018) ........ 18

*Bilski v. Kappos*,
561 U.S. 593 (2010) ........ 4, 5

*BSG Tech LLC v. Buyseasons, Inc.*,
899 F.3d 1281 (Fed. Cir. 2018) ........ 2

*buySAFE, Inc. v. Google, Inc.*,
765 F.3d 1350 (Fed. Cir. 2014) ........ 12, 17

*Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*,
776 F.3d 1343 (Fed. Cir. 2014) ........ 6

*Cuvillier v. Sullivan*,
503 F.3d 397 (5th Cir. 2007) ........ 4

*Diamond v. Chakrabarty*,
447 U.S. 303 (1980) ........ 5

*Elec. Power Grp., LLC v. Alstom S.A.*,
830 F.3d 1350 (Fed. Cir. 2016) ........ *passim*

*Enfish, LLC v. Microsoft Corp.*,
822 F.3d 1327 (Fed. Cir. 2016) ........ 8, 15

*Finjan, Inc. v. Blue Coat System, Inc.*,
879 F.3d 1299 (Fed. Cir. 2018)....6, 14

*Gottschalk v. Benson*,
409 U.S. 63 (1972)....5

*Indep. Trust Corp. v. Stewart Info. Servs. Corp.*,
665 F.3d 930 (7th Cir. 2012) ....4

*Internet Patents Corp. v. Active Network, Inc.*,
790 F.3d 1343 (Fed. Cir. 2015)....9, 10

*IPA Techs., Inc. v. Amazon.com, Inc.*,
352 F. Supp. 3d 335 (D. Del. 2019)....18

*Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*,
66 F. Supp. 3d 829 (E.D. Tex. 2014)....10

*PPS Data, LLC v. Jack Henry & Assocs., Inc.*,
No. 2:18-cv-00007-JRG, 2019 WL 1317286 (E.D. Tex. Mar. 21, 2019)....6

*Pragmatus Telecom, LLC v. Genesys Telecommunications Laboratories, Inc.*,
114 F.Supp.3d 192 (D. Del., 2015)....8, 9

*SAP Am., Inc. v. InvestPic, LLC*,
898 F.3d 1161 (Fed. Cir. 2018)....6, 7

*Secured Mail Sols. LLC v. Universal Wilde, Inc.*,
873 F.3d 905 (Fed. Cir. 2017)....13

*In re TLI Commc'ns LLC Patent Lit.*,
823 F.3d 607 (Fed. Cir. 2016)....2, 8, 12, 17

*Twilio, Inc. v. Telesign Corporation*,
249 F.Supp.3d 1123 (N.D. Cal., 2017) ....15, 16, 17

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
874 F.3d 1329 (Fed. Cir. 2017)....2, 10, 16

*Ultramercial, Inc. v. Hulu, LLC*,
772 F.3d 709 (Fed. Cir. 2014)....4, 11, 14, 15

*Voip-Pal.Com, Inc. v. Apple Inc.*,
375 F. Supp. 3d 1110 (N.D. Cal. 2019) ....8, 9, 10

**Statutes**

35 U.S.C. § 101.... *passim*

**Other Authorities**

Rule 12(b)(6) of the Federal Rules of Civil Procedure............................................................1, 2, 4

## I. NATURE AND STAGE OF THE PROCEEDINGS

On November 24, 2020, Coretek filed a Complaint for Infringement of Patent ("Complaint"), asserting the Asserted Patents. Coretek accuses "FreeConferenceCall" communications software (the "Accused Product") of infringing "at least one claim" of the Asserted Patents because the Accused Product purportedly routes a call without using a network operator's home location register and determines a location of a wireless device by extracting data from a database. (D.I. 1 at ¶¶ 21, 35, 42, 62.)

## II. SUMMARY OF THE ARGUMENT

Defendant Free Conferencing Corporation moves pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss Coretek Licensing LLC's Complaint for Infringement of Patent (D.I. 1 ("Complaint")) for failure to state a claim.[1]

The claims of the asserted patents are invalid because they are directed to patent-ineligible subject matter under 35 U.S.C. § 101. The purported advance of Coretek's claims is the *idea* of call routing, where the user can "set up call in accordance to a user's own choice of routing" ('512 Patent, 6:47-49) and the *idea* of storing and extracting data, where data is accessible via "storing it and updating it in one or more accessible databases" ('575 Patent, 4:8-9). The claims recite the mere notion of using generic computer components and processing for their generic purposes in order to achieve the abstract result of call routing ('512, '154, and '551 Patents) and extracting and storing data (the '575 Patent). They use result-based functional language described only at a high-level of generality. The claims are abstract because the applicants failed to describe with any

[1] Coretek Licensing LLC sued and served the incorrect entity. There is no entity called "FreeConferencingCall.com, Inc." If Coretek intended to serve Free Conferencing Corporation, it did so improperly. Further, Free Conferencing Corporation is the incorrect entity in this suit because the Accused Product is owned by CarrierX, LLC. Despite Coretek's improper service and incorrect party naming, Free Conferencing Corporation is responding to Coretek's lawsuit.

specificity how to achieve their intended goal in a non-abstract way. *See Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337-38 (Fed. Cir. 2017).

Moreover, neither the generic processing nor the recited components—such as a wireless device, a server, a software application, and a home or visitor location register—whether considered individually or in combination, amounts to any **technical** improvement in the functioning of the system or any components thereof. Rather, the components are used only as tools to limit the abstract idea of call routing. *See BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290-91 (Fed. Cir. 2018) ("If a claim's only 'inventive concept' is the application of an abstract idea using conventional and well-understood techniques, the claim has not been transformed into a patent-eligible application of an abstract idea."). In other words, the generic components do not supply an inventive concept and instead "merely provide a generic environment in which to carry out the abstract idea." *In re TLI Commc'ns LLC Patent Lit.*, 823 F.3d 607, 611 (Fed. Cir. 2016).

Resolving this issue does not require discovery or formal claim construction. To avoid wasting judicial and party resources unnecessarily litigating invalid patents, Free Conferencing thus requests that the Court dismiss the Complaint pursuant to Rule 12(b)(6).

## III. STATEMENT OF THE FACTS

### A. The Asserted Patents

#### 1. The Routing Patents

The '512, '154, and '551 Patents (the "Routing Patents") [2] are directed to "a method and apparatus of interfacing and connecting a wireless device to a network," and specifically to "make

[2] The '512 Patent was filed on March 7, 2007, and issued on October 14, 2014, claiming priority to PCT application filed on March 8, 2008. The '154 and '551 Patents, are continuations of the '512 Patent. All three are entitled "Method of enabling a wireless device to make a network connection without using a network operator's home location register" and share specifications.

a network connection without using a network operator's home location register (HLR)." '512 Patent, 1:18-22. The applicants acknowledged that wireless devices can "handle voice-over-internet-protocol (VoIP) calls" through "wireless networks." *Id.*, 1:28-32. But existing call routing methods purportedly "can be restricted" to wireless networks "made available by the wireless network(s) that is subscribed to." *Id.*, 1:27-31.

The applicants described their purported invention only in functional terms and only at a high-level of generality. For example, exemplary Claim 1 of the '512 Patent describes "A method of . . . initiating a network connection without using a network operator's home location" consisting of the following steps described only in result-based functional language: (1) "*contacting* a server to communicate with the server over a wireless link," (2) "*send*, over the wireless link, data to the server that defines a call request," and (3) "*routing* to a third party end-user over all available networks for that call request without using the network operator's home or visitor location register." *Id.*, cl. 1 (emphasis added).

**2. The Extraction Patent**

The '575 Patent (the "Extraction Patent")[3] is directed to a VoIP (Voice over Internet Protocol) location system "designed to provide VoIP location information to a server." '575 Patent, 1:19-21. The applicants acknowledged that VoIP systems already existed and sent and received data by means of a URI (uniform resource identifier), consisting of a URL (uniform resource locator) and a URN (uniform resource name). *Id.* at 1:30-35. Extracting the reply from a URI, a "return path," was considered "cumbersome and inflexible as it does not allow receipt of the latest, most up-to-date data or information." *Id.* at 1:35-43. Their solution, the purported invention, was

[3] The '575 Patent, entitled "Dynamic VoIP location system," was filed on April 4, 2012, and it issued on June 14, 2016. The '575 Patent claims priority to PCT/GB2012/050756, which was filed on October 11, 2012.

to save data associated with a "VoIP return paths or 'VoIP location' addresses to a database." *Id*. at 2:35-36.

Similar to the Routing Patents, the applicants of the Extraction Patent described their purported invention only in functional terms and only at a high-level of generality. For example, Claim 1 of the '575 Patent describes "A system" described only in result-based functional language: (1) "detecting," (2) "extracting," (3) "storing," and (4) "updating" a "VoIP address or return path" of any "VoIP enabled wireless device registered to the system." *Id*., cl. 1.

## IV. LEGAL STANDARD

### A. This case should be disposed of at the pleading stage through Rule 12(b)(6).

Under Rule 12(b)(6), a party may move to dismiss a complaint that fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion, a complaint must provide "allegations that raise a right to relief above the speculative level." *Indep. Trust Corp. v. Stewart Info. Servs. Corp*., 665 F.3d 930, 935 (7th Cir. 2012). Although factual allegations are taken as true, legal conclusions are given no deference—those matters are left for the court to decide. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting the tenet that allegations are taken as true on a motion to dismiss "is inapplicable to legal conclusions"). "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief [as a matter of law], this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier v. Sullivan*, 503 F.3d 397, 401 (5th Cir. 2007) (internal citations and quotations omitted). Patentability under 35 U.S.C. § 101 is a threshold legal issue. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010). Accordingly, the § 101 inquiry is properly raised at the pleadings stage if it is apparent from the face of the patent that the asserted claims are not directed to eligible subject matter. *See Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 718-19 (Fed. Cir. 2014) (Mayer, J., concurring).

**B. The Law of 35 U.S.C. § 101.**

Section 101 of the Patent Act sets forth four categories of patentable subject matter: "any new and useful process, machine, manufacture, or composition of matter." 35 U.S.C. § 101. Also, the law recognizes three exceptions to patent eligibility: "laws of nature, physical phenomena, and *abstract ideas*." *Diamond v. Chakrabarty*, 447 U.S. 303, 309 (1980) (emphasis added). Abstract ideas are ineligible for patent protection because a monopoly over these ideas would preempt their use in all fields. *See Bilski*, 561 U.S. at 611–12. In other words, "abstract intellectual concepts are not patentable, as they are the basic tools of scientific and technological work." *Id.* at 653 (quoting *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)).

Determining whether a patent claim is impermissibly directed to an abstract idea involves two steps. First, the court determines "whether the claims at issue are directed to a patent-ineligible concept." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014). Second, if the claim contains an abstract idea, the court evaluates whether there is "an 'inventive concept'—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.* (internal quotations and citations omitted).

## V. ARGUMENT

The claims of the Asserted Patents are invalid under § 101 because they fail both prongs of the *Alice* test. Each of the claims is directed to the abstract idea of call routing (for the Routing Patents) and extracting and storing data (for the Extraction Patent), and none contains an "inventive concept sufficient to ensure that the patents in practice amount to ***significantly more*** than a patent upon the ineligible concept itself." *See Alice*, 134 S. Ct. at 2355 (emphasis added).

### A. The Routing Patents are Invalid under 35 U.S.C. § 101

#### 1. Claim 1 of the '512 Patent is representative of the Routing Patent claims.

Claim 1 of the '512 Patent is representative of the claims.[4] *See, e.g.*, *Baggage Airline Guest Servs., Inc. v. Roadie, Inc.*, 351 F. Supp. 3d 753, 758 (D. Del. 2019) (Andrews, J.) (quoting *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014) (invalidating 242 claims after analyzing only two "representative claims" where the other claims were "substantially similar in that they recite little more than the same abstract idea")); *see also Alice*, 573 U.S. at 224–26 (invalidating over 200 claims across four patents based on two representative claims). In assessing whether a claim is directed to an abstract idea, courts begin by analyzing the "focus" of the claim, i.e., its "character as a whole," in order to determine whether the claim is directed to an abstract idea. *See SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018). For example, the Federal Circuit has explained that courts should examine the patent's "'claimed advance' to determine whether the claims are directed to an abstract idea." *Finjan, Inc. v. Blue Coat System, Inc.*, 879 F.3d 1299, 1303 (Fed. Cir. 2018).

The remaining claims of the Routing Patents recite the same abstract idea: call routing. *See PPS Data, LLC v. Jack Henry & Assocs., Inc.*, No. 2:18-cv-00007-JRG, 2019 WL 1317286, at *5 (E.D. Tex. Mar. 21, 2019) (articulating that defendants first bear the burden of demonstrating a claim is representative, which then shifts to the plaintiff to identify a difference material to the § 101 analysis). Indeed, the independent claims of the Routing Patents are substantially similar, with the only difference in the medium making a network connection: "wireless device," ('512

---

[4] As is the case here, where claims are "substantially similar and linked to the same abstract idea," courts may look to representative claims in a § 101 analysis. *Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1349 (Fed. Cir. 2014).

Patent), "wireless handheld cellular phone device ('154 Patent), or a "computer program embodied on a non-transitory storage medium" ('551 Patent). The other independent of the Routing Patents are directed to a "system," "server," or "computer program" performing the same claimed method steps. Representative Claim 1 of the '512 Patent is recited in method terms, but each of the remaining independent claims includes almost identical limitations.

The resemblance of Claim 1 to the other independent claims is further supported by the fact that Coretek characterizes each of the Routing Patent claims as "enabling a wireless device . . . to initiate a network connection without using a network operator's home location register." *See* Complaint at ¶¶ 14, 56, 60. Coretek further alleges that the Accused Product meets each of these claim limitations by "enabling a wireless device (e.g., Smartphone)" and "initiat[ing] a network connection (e.g., SIP invite) without using a network operator's home location register that covers that region." *Id*. at ¶¶ 65, 70, 74, 81, 86, 90, 94, 111, 122, 126, 130.

Because Claims 22, 23, and 24 of the '512 Patent, Claims 1, 22, 23, and 24 of the '154 Patent, and Claims 1, 22, 23, and 24 of the '551 Patent, cannot be meaningfully distinguished from Claim 1 of the '512 Patent, Claim 1 is representative, and all independent claims are invalid under *Alice*.

**2. *Alice* Step 1: Claim 1 of the '512 Patent is directed to the abstract idea of call routing.**

The "focus" of Claim 1 is the fundamental practice of call routing, and it achieves it by initiating a network connection, contacting a server over a wireless link, and sending and receiving data. *See SAP Am., Inc.*, 898 F.3d 1161, 1167. The '512 Patent describes call routing by using a "server (PASCM)" and a wireless device with a built-in routing module ("PAM"), where the "PAM provides location updates each time the WD or HS changes wireless network name or wireless network country or region or state." '512 Patent, 6:55-57. The purported invention is

implemented using a handful of generic, unmodified components, where a "module sends any change in the wireless network name or country code to the server." *Id.*, 3:16-17. Nothing in Claim 1 is concerned with improving the functioning of the wireless device, server, software application, or home or visitor location register from a ***technical*** standpoint, which is why the claimed components are described "in vague terms without any meaningful limitations." *In re TLI*, 823 F.3d at 612-13. Providing call routing functionality through a "module" on a conventional "wireless device" and running a "software application" on a conventional "server," requiring no modification, is not an "improvement in computer capabilities," but rather "a process that qualifies as an abstract idea for which computers are invoked merely as a tool." *See Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1336 (Fed. Cir. 2016). Any alleged cost savings or *functional* improvements resulting from Claim 1 arise wholly out of the conventional advantages of using such generic processing and components as tools. *See Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016) (distinguishing patent eligible improvements in computer functionality from patent ineligible improvements that use computers as tools).

The decisions in *Pragmatus Telecom, LLC v. Genesys Telecommunications Laboratories, Inc.*, 114 F.Supp.3d 192 (D. Del., 2015) and *Voip-Pal.Com, Inc. v. Apple Inc.*, 375 F. Supp. 3d 1110 (N.D. Cal. 2019) are instructive. The *Pragmatus* claims were directed to "the abstract idea of connecting customers to call centers," which the court found to be a patent-ineligible abstract idea. *Pragmatus Telecom*, 114 F. Supp. 3d 192, 200. In fact, the *Pragmatus* claim is directed to the same type of abstract idea as the '512 Patent: establishing a network connection with a user device based on information collected from the user device. *Id.* The court found that the abstract idea of having "[c]all centers where customers call in to speak with live agents" was "not new," even though the "invention might be faster, automated, and more streamlined." *Id.* Here, the claims

of the ’512 Patent similarly collect data by a “module,” which sends this data to a “server,” and a “software application running on the server” decides “on the appropriate routing to a third party end-user.” ’512 Patent, cl. 1. This is no different than connecting customers to call centers based on received data, as found patent-ineligible in *Pragmatus*.

In *Voip-Pal.Com*, the claims were directed to routing calls based on characteristics of a caller and a callee. *Id*. at 1130. The plaintiffs alleged that the purported invention “improved call routing technology enabling *better interoperability of communication networks*” *Id*. at 1130. But the claim was described only in high-level functional terms, such as “locating a caller dialing profile” and “classifying the call.” *Id.* The specification, for example, “makes clear that the ’815 Patent did not invent the caller dialing profile, but rather, the caller dialing profile is comprised of various identificatory attributes of subscribers that are left undefined.” *Id*. at 1131. The call classification step discloses analysis of the classification criteria, by, for example, classifying a call as “public” or “private,” and then sending a message based on that analysis. *Id*. The court concluded that the claims were directed to an abstract idea. *Id.* at 1138 (“The Court finds that at *Alice* step one, claim 1 of the ’815 Patent is directed to an abstract idea. At *Alice* step two, there is no inventive concept sufficient to save the claim.”).

Like the *Pragmatus* and *Voip-Pal.com* claims, the claims of the ’512 Patent fail to disclose the details of how to implement their call routing method, and instead describe the system only at a high level of generality. Additionally, nothing in Claim 1 explains from a technical standpoint how a “module” contacts a “server to communicate,” or how this data exchanged between the two enables call routing—and further not in a way that advances technology. *See Voip-Pal.Com, Inc*., 375 F. Supp. 3d 1110, 1132-33. In other words, the broad claim language covers only the resulting system the applicants envisioned, but does not teach how to achieve it. *See Internet Patents Corp.*

*v. Active Network, Inc.*, 790 F.3d 1343, 1348 (Fed. Cir. 2015) (concluding claim not directed to patent-eligible subject matter where "[t]he mechanism for maintaining the state is not described, although this is stated to be the essential innovation"). Just like the *Voip-Pal.Com* claims, regardless of any tangible components claimed or purported problems solved, Claim 1 is abstract because "the process of sending a network routing message is not unique to the patent, and is implemented using generic computers." *Id.* at 375 F. Supp. 3d 1110, 1141.

The result-based functional language confirms the abstractness of Claim 1. For example, in *Two-Way Media*, the Federal Circuit affirmed the district court's holding that the patentee's "method for routing information" was directed to the abstract idea of "(1) sending information, (2) directing the sent information, (3) monitoring the receipt of the sent information, and (4) accumulating records about receipt of the sent information." 874 F.3d at 1337-38. The Federal Circuit highlighted that the patent used "result-based functional language" like "converting," "routing," "controlling," "monitoring," and "accumulating records," without "sufficiently describ[ing] how to achieve these results in a non-abstract way." *Id.* Similarly, Claim 1 requires the functional results of "contacting a server," "send[ing] data," and "deciding on the appropriate routing," based on the sent data, "but does not sufficiently describe how to achieve these results in a non-abstract way." *Id.* at 1337.

By only claiming the desired result—routing calls—without describing any specific roadmap for doing so, Claim 1 of the '512 Patent falls short of claiming eligible subject matter under § 101. *See Internet Patents*, 790 F.3d at 1348. And because of its largely functional nature, the '512 Patent risks preempting *all* methods or systems for routing calls. *See, e.g.*, *Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, 66 F. Supp. 3d 829, 843 (E.D. Tex. 2014) (finding "preemptive effect . . . broad" where "the claims [were] largely functional in nature, they [did] not

provide any significant description of the particular means by which the various recited functions are performed," and "[a]ll that [was] disclosed [was] the ultimate objective"). Claim 1 thus fails *Alice* step one because it is directed to a patent-ineligible concept. *Alice*, 134 S. Ct. at 2355.

### 3. *Alice* Step 2: Claim 1 contains no inventive concept to transform the abstract idea into patent-eligible subject matter.

Because Claim 1 of the '512 Patent is directed to an abstract idea, the Court must next determine whether it contains an "inventive concept sufficient to transform the claimed abstract idea into a patent eligible application." *Alice,* 134 S. Ct. at 2357 (internal quotations omitted). To pass this test, Claim 1 "must include additional features" that "must be more than well-understood, routine, conventional activity." *Ultramercial*, 772 F.3d at 715 (quotation omitted). Here, Claim 1 is broadly generic and does not contain meaningful limitations that would restrict it to a non-routine, specific application of the abstract idea.

Although the stated goal of the '512 Patent is to provide the "lowest cost routing for the [network] connection," '512 Patent, 3:41-42, not a single **technical** improvement is discussed, much less claimed. Claim 1 requires a "module," "server," and a "wireless link" connecting the two. A "software application running on the server" decides "on the appropriate routing to a third party end-use." No special programming or improved components are claimed or required. Rather, the specification indicates vaguely that the "server will typically decide on the lowest cost routing for the connection." *Id*., 3:41-42.

Nor are any special components needed. For example, the claimed "module" is "capable of" wireless and wired communication between a wireless device and a "server" *Id.*, 8:52-59. Moreover, the applicants acknowledged that the wireless devices, wireless links, and servers, are "**any available** current and future" versions of technologies, *Id*., 9:1-31 (emphasis added). Indeed, objectively speaking, "[n]othing in [Claim 1], understood in light of the specification, requires

anything other than off-the-shelf, conventional computer, network and [processing] for gathering, sending, and presenting the desired information." *Elec. Power*, 830 F.3d at 1355. There is simply nothing "inventive" about using a communication "module" and "server" to route calls. The claims are altogether devoid of any explanation as to how to implement the invention in a specific manner that would improve the functioning of existing systems or components from a technical standpoint and thus provide no inventive concept. *See In re TLI*, 823 F.3d at 615; *see also buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) ("That a computer receives and sends the information over a network—with no further specification—is not even arguably inventive.").

This case is unlike *BASCOM* in which the Federal Circuit held that the ordered combination of claim limitations was not routine and conventional because it placed a filtering tool at a specific location that improved on prior art technology. *BASCOM Global Internet Services, Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016). The inventive concept was "found in the non-conventional and non-generic arrangement of known, conventional pieces." *Id*. As discussed, the applicants of the Asserted Patents did not claim to invent call routing functionality. Rather, they simply wanted to add a "module" and a "server" to an existing wireless calling infrastructure such that the module can communicate location changes. '512 Patent, 8:11-18. Adding a "location update" module that sends and receives location data from a server so that it can "decide on the appropriate routing" does not result in a technical improvement on prior art technology or a new and improved arrangement of components. *See id*., 10:1; *id*., cl. 1. Thus, unlike the claimed limitations at issue in *BASCOM*, the recited steps here are routine and conventional both individually and as an ordered combination. *See Athena Diagnostics, Inc. v. Mayo Collaborative Servs., LLC*, 915 F.3d 743, 754 (Fed. Cir. 2019), cert. denied, 140 S. Ct. 855 (2020) (concluding

that claims were ineligible "whether viewed individually or as an ordered combination [where they] only require standard techniques to be applied in a standard way").

All the applicants have accomplished is to apply an abstract, well-known concept to VoIP call routing. But, "[m]ost obviously, limiting the claims to [a] particular technological environment . . . is, without more, insufficient to transform them into patent-eligible applications of the abstract idea at their core." *Elec. Power Grp.*, 830 F.3d at 1354. The purported advance is the **result** of providing a less expensive channel for call routing and reduce "an operator's ability to restrict what end-users can do," but Claim 1 does not describe any **particular mechanism** for achieving the result. *See Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 912 (Fed. Cir. 2017) (concluding claims fail *Alice* step two where "[t]he claim language does not provide any specific showing of what is inventive about the [limitation in question] or about the technology used to generate and process it"). The recited limitations—whether considered individually or as an ordered combination—are insufficient to add "significantly more" to the abstract idea and thus lacks any "inventive concept." *See Alice*, 134 S. Ct. at 2359-60.

**4. The remaining claims are ineligible for the same reasons.**

The dependent claims fare no better than the independent claims. The only differences relate to token or insignificant pre- or post-solution activity—such as:

| Pre- or Post-Solution Activity | Dependent Claims |
|---|---|
| Specifying a communications protocol | Claim 2 of the '512 Patent<br>Claim 2 and 20 of the '154 Patent<br>Claims 7 and 14 of the '551 Patent |
| Specifying communication means by the wireless device | Claims 3, 4, and 21 of the '512 Patent<br>Claim 3 of the '154 Patent<br>Claims 12 and 16 of the '551 Patent |
| Specifying manual data entry into the server | Claim 5 of the '512 Patent<br>Claim 4 of the '154 Patent<br>Claim 13 of the '551 Patent |

| | |
|---|---|
| Specifying server actions once a call is detected or established | Claims 6, 7, and 20 of the '512 Patent<br>Claims 5, 6, 8, and 19 of the '154 Patent<br>Claim 9 of the '551 Patent |
| Specifying additional generic functions by the server or computer program | Claims 8, 9, 10, and 11 of the '512 Patent<br>Claims 7, 9, 10, and 11 of the '154 Patent<br>Claims 5, 6, 8, 10, and 11 of the '551 Patent |
| Specifying additional data sent and received by the module or computer program | Claims 12-19 of the '512 Patent<br>Claims 12-18, 20 of the '154 Patent<br>Claims 2, 15-21 of the '551 Patent |
| Specifying the location of the computer program | Claims 3 and 4 of the '551 Patent |

*See Ultramercial*, 772 F.3d at 715-16 (noting that claims are not meaningfully limited when they contain only insignificant or token pre or post-solution activity). There is no basis to claim that any of those concepts are not well known, routine, or conventional. None of these limitations are sufficient to raise the claims beyond the abstract idea to which they are directed. Like Claim 1 of the '512 Patent, the limitations in the remaining claims are directed to the same abstract idea of call routing and are altogether devoid of any "inventive concept." They are thus patent-ineligible under § 101. *See Alice*, 134 S. Ct. at 2359-60.

**B. The Extracting Patent is Invalid under 35 U.S.C. § 101**

**1. Claim 1 of the Extracting Patent is representative.**

The independent claims of the Extracting Patent can be evaluated collectively for purposes of the § 101 inquiry because they are all "substantially similar and linked to the same abstract idea." *Baggage Airline Guest Servs.*, 351 F. Supp. 3d 753, 758; *Finjan, Inc.*, 879 F.3d 1299, 1303. The independent claims of the Extracting Patent recite the same abstract idea: storing and extracting data. Representative Claim 1 of the '575 Patent is recited as a system, but each of the independent claims includes almost identical limitations (Claims 15-18, 19). The only difference in the independent claims relates to the software module enabling or disabling communications in a mobile device as a result of the extracted data (Claims 18 and 19). This does not change the analysis of the abstract idea of storing and extracting

data as the additional limitations relate to a token or insignificant pre- or post-solution activity. *See Ultramercial*, 772 F.3d at 715-16 (noting that claims are not meaningfully limited when they contain only insignificant or token pre or post-solution activity). Like Claim 1, the limitations in the remaining claims are directed to the same abstract idea of storing and extracting data, and are altogether devoid of any "inventive concept." They are thus patent-ineligible under § 101. *See Alice*, 134 S. Ct. at 2359-60.

**2. Alice Step 1: Claim 1 of the Extracting Patent is directed to the abstract idea of storing and extracting data.**

The Extracting Patent describes a method of providing an "automated way of identifying and reporting" location "to a database." '575 Patent, 2:33-35. The Extracting Patent requires a handful of generic, unmodified components to achieve goals of the purported invention. Detecting, extracting, and storing a return path in a generic database, requiring no modification, is not an "improvement in computer capabilities," but rather "a process that qualifies as an abstract idea for which computers are invoked merely as a tool." *See Enfish*, 822 F.3d 1327, 1336. The power and cost savings discussed in the specification arise wholly out of the conventional advantages of using such generic processing and components as tools. *See Elec. Power Grp.*, 830 F.3d 1350, 1354 (distinguishing patent eligible improvements in computer functionality from patent ineligible improvements that use computers as tools).

The decision in *Twilio, Inc. v. Telesign Corporation*, 249 F.Supp.3d 1123 (N.D. Cal., 2017) is instructive, where the claims were found to be directed to "enabling multi-modal communication by looking up and selecting one or more external communication provider(s) associated with a communication destination." *Twilio, Inc.*, 249 F.Supp.3d 1123, 1153. The claims in that case described looking up "external communication providers" that are associated with a "communication destination" (stored in a database) and selecting an "external communication provider" to establish communication with the "communication destination." *See id*. at 1152. The

court found that this is an abstract idea, explaining that the claim was directed to fundamental human activity. *Id*. at 1153-54.

Similarly, here, Claim 1 of the Extracting Patent detects, extracts, and stores a "VoIP (Voice over internet protocol) location" in "one or more accessible databases." '575 Patent, cl. 1. Like the claims in *Twilio,* Claim 1 recites steps for a system to detect and extract a devices location (a "VoIP address or return path") and establish communication with a "wireless device registered to the system." *Id*. The Extracting Patent fails to disclose any technical details of how the system receiving a "return path" from a database advances technology. The broad claim language merely uses known database technology and applies it in context of a VoIP enabled wireless device.

The result-based functional language confirms the abstractness of Claim 1. As in the case *Two-Way Media* (discussed above in IV.A.1), Claim 1 requires the functional results of "detecting" "extracting," "storing," and "updating" data, "but does not sufficiently describe how to achieve these results in a non-abstract way." 874 F.3d at 1337. Because of its largely functional nature, the '575 Patent risks preempting all methods of detecting, extracting, and storing VoIP data. Claim 1 fails Alice step one because it is directed to a patent-ineligible concept. *Alice*, 134 S. Ct. at 2355.

**3. Alice Step 2: Claim 1 contains no inventive concept to transform the abstract idea into patent-eligible subject matter.**

The Extracting Patent's stated goal is to provide a "reliable return path (i.e., VoIP location) whilst ensuring minimal required power consumption." '575 Patent, 3:11-12. But not a single technical improvement is discussed: Claim 1 requires a "database," a "server," and a "software module," where the "software module" is downloaded onto a mobile device and "will then connect and authenticate to the server . . . at certain time intervals." *Id*. at 3:41-44. No special programming or improved components are claimed or required.

Nor are any special components needed. Objectively speaking, "[n]othing in [Claim 1], understood in light of the specification, requires anything other than off-the-shelf, conventional computer, network and [processing] for gathering, sending, and presenting the desired

information." *Elec. Power*, 830 F.3d at 1355. There is simply nothing inventive about a "software module" sending and receiving information from a "server" over some time interval. The claims are altogether devoid of any explanation as to how to implement the invention in a specific manner that would improve the functioning of existing systems or components from a technical standpoint and thus provide no inventive concept. *See In re TLI,* 823 F.3d at 615; *see also buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) ("That a computer receives and sends the information over a network—with no further specification—is not even arguably inventive."); *Twilio, Inc.*, 249 F.Supp.3d 1123, 1156 ("[C]laim 15 simply claims a technology-independent abstract process that can be deployed with any communication network.").

As discussed above for the Routing Patents, the applicants of the Extracting Patent have not described any ***particular mechanism*** for achieving the result of a less expensive, power-saving VoIP system. The recited limitations—whether considered individually or as an ordered combination—are insufficient to add "significantly more" to the abstract idea and thus lacks any "inventive concept." *See Alice*, 134 S. Ct. at 2359-60.

**4. The remaining claims are ineligible for the same reasons.**

The dependent claims recite an abstract idea. The only differences relate to token or insignificant pre- or post-solution activity—such as: specifying the type of data sent or received from a VoIP device (Claims 2, 4, 7, 12); specifying the time interval (Claim 3); specifying multiple VoIP wireless devices (Claims 5, 6); specifying where a server stores data and how it is downloaded (Claims 8, 10); specifying the types of VoIP devices (Claims 9, 13); specifying additional actions performed by the software module (Claim 11); specifying the data communications protocol (Claim 14). There is no basis to claim any of those concepts are not well known, routine, or conventional. None of these limitations are sufficient to raise the claims beyond the abstract idea to which they are directed. Like Claim 1 of the Extracting Patent, the limitations in the remaining claims are directed to the same abstract idea of storing and extracting data, and are altogether devoid of any "inventive concept." They are thus patent-ineligible under § 101. *See Alice*, 134 S. Ct. at 2359-60.

### C. There are no factual disputes preventing a ruling

This case does not present any factual disputes requiring resolution before the Court can rule on this § 101 issue. In *Berkheimer*, the Federal Circuit noted that the specification explicitly "describe[d] an inventive feature that store[d] parsed data in a purportedly unconventional manner." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1369 (Fed. Cir. 2018). The Federal Circuit then examined whether the improvements described in the specification were included in the claims. For those claims where the inventive feature in the specification was "captured in the claims," the Federal Circuit found a "factual dispute regarding whether the invention describe[d] well-understood, routine, and conventional activities." *Id*. But where the claims did not recite the purportedly inventive features described in the specification, the Federal Circuit concluded that they were directed to patent ineligible subject matter under § 101. *Id.* Here, in contrast, there is no need for fact discovery at all because neither the claims nor the specifications of the Asserted Patents describe any unconventional components or the use of generic components in some unconventional manner, and no amount of fact discovery can change that.

Coretek's allegations in its Complaint—which merely recite or summarize claim limitations—do nothing to alter these basic facts. *See IPA Techs., Inc. v. Amazon.com, Inc.*, 352 F. Supp. 3d 335, 349-51 (D. Del. 2019) (concluding that plaintiff's boilerplate allegations and quotations from the specification "do not alter the *Alice* Step Two analysis"). Free Conferencing's motion does not turn on factual allegations about what is routine or conventional. Instead, the claims lack an inventive concept because they do not recite anything significantly more than the abstract ideas implemented with functionally-recited elements and admittedly generic computer components.

## VI. CONCLUSION

For the foregoing reasons, Free Conferencing respectfully requests that the Court dismiss Coretek's Complaint for failure to state a claim upon which relief can be granted. Because leave to amend would be futile, Free Conferencing requests dismissal with prejudice.

Dated: December 22, 2020

Respectfully submitted,

FISH & RICHARDSON P.C.

By: */s/Jeremy D. Anderson*
Jeremy D. Anderson (#4515)
222 Delaware Avenue, 17th Floor
Wilmington, DE 19801
(302) 652-5070 (Telephone)
(302) 652-0607 (Facsimile)
janderson@fr.com

Neil J. McNabnay
Ricardo Bonilla
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, Texas 75201
(214) 747-5070 (Telephone)
(214) 747-2091 (Facsimile)
mcnabnay@fr.com
rbonilla@fr.com

***COUNSEL FOR DEFENDANTS***
***FREE CONFERENCING CORPORATION***