# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CORETEK LICENSING LLC, *Plaintiff*, v. FREECONFERENCECALL.COM, INC., *Defendant*. | C.A. No: 20-1597-MN-CJB <br><br> PATENT CASE <br><br> **JURY TRIAL DEMANDED** |

### DEFENDANT FREE CONFERENCING CORPORATION'S REPLY IN SUPPORT OF ITS RULE 12(b)(6) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Dated: February 16, 2021

FISH & RICHARDSON P.C.
Jeremy D. Anderson (#4515)
222 Delaware Avenue, 17th Floor
Wilmington, Delaware 19801
(302) 652-5070 (Telephone)
(302) 652-0607 (Facsimile)
janderson@fr.com

Neil J. McNabnay
Ricardo J. Bonilla
Adil A. Shaikh
1717 Main Street, Suite 5000
Dallas, Texas 75201
(214) 747-5070 (Telephone)
(214) 747-2091 (Facsimile)
mcnabnay@fr.com
rbonilla@fr.com
shaikh@fr.com

***ATTORNEYS FOR DEFENDANT***
***FREE CONFERENCING CORPORATION***

# TABLE OF CONTENTS

I. ARGUMENT ................................................................................................................. 2

    A. The Routing Patents ........................................................................................... 2

        1. The Routing Patents Fail *Alice* Step 1 Because They Are Directed to an Abstract Idea ............................ 2

        2. The Routing Patents Fail *Alice* Step 2 Because Using a "Module" To Route Calls is Not "Inventive" ................................................................................ 3

    B. The Extraction Patents ....................................................................................... 4

        1. The Extraction Patents Fail *Alice* Step 1 because they are Directed to an Abstract Idea .............................................................. 4

        2. The Extraction Patents Fail *Alice* Step 2 because "Identifying the VoIP Location" by Extracting and Storing Data is not "Inventive" ......................................................... 6

    C. Patent Eligibility of the Asserted Patents Can Be Determined at the Rule 12(b)(6) Stage. ............................................................. 7

II. CONCLUSION ............................................................................................................. 7

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                                                                 **Page(s)**

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
   134 S. Ct. ................................................................................................................*passim*

*BSG Tech LLC v. Buyseasons, Inc.*,
   899 F.3d 1281 (Fed. Cir. 2018) .................................................................................1, 6

*Elec. Power Grp., LLC v. Alstom S.A.*,
   830 F.3d 1350 (Fed. Cir. 2016) .................................................................................4, 6

*Enfish, LLC v. Microsoft Corp.*,
   822 F.3d 1327 (Fed. Cir. 2016) .................................................................................4, 7

*Epic IP LLC v. Backblaze, Inc.*,
   351 F. Supp. 3d 733 (D. Del. 2018) ..............................................................................3

*FairWarning IP, LLC v. Iatric Sys., Inc.*,
   839 F.3d 1089 (Fed. Cir. 2016) .....................................................................................5

*Intellectual Ventures I LLC v. Capital One Financial Corp.*,
   850 F.3d 1332 (Fed. Cir. 2017) ..............................................................................2, 3, 4

*Simio, LLC v. FlexSim Software Products, Inc.*,
   983 F.3d 1353 (C.A.Fed. (Utah), 2020) ........................................................................1

*T-Jat Sys. 2006, Ltd. v. Expedia, Inc.*
   (DE), No. CV 16-581-RGA, 2018 WL 1525496 (D. Del. Mar. 28, 2018) ..........7

*In re TLI Commc'ns LLC Patent Litig.*,
   823 F.3d at 615 .............................................................................................................3

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
   874 F.3d 1329 (Fed. Cir. 2017) .....................................................................................5

Coretek's response does nothing to change the fact that the claims of the Asserted Patents are patent-ineligible under 35 U.S.C. § 101 because they fail both prongs of the *Alice* test. As such, Coretek's Complaint should be dismissed for failure to state a claim upon which relief can be granted. Indeed, similar to the bare recitations of claim language it used in its Complaint, Coretek's response is largely based on conclusory recitations of distinguishable case law with no application to the facts in this case. For example, Coretek asserts that the utilization of "a specific module" in the Routing Patents, and a "software module" in the Extraction Patents, results in "a specific device with a specific operation, . . . not directed to a result or effect that is an abstract idea" and "represent technological improvements over the prior art." Opp. at 16. Coretek further alleges that the claim elements of both the Extraction Patents "as combined, improved upon the prior art." *Id*. at 2. These conclusory allegations do not shelter the claims from ineligibility. *See Simio, LLC v. FlexSim Software Products, Inc.*, 983 F.3d 1353, 1365 (C.A.Fed. (Utah), 2020) ("We disregard conclusory statements when evaluating a complaint under Rule 12(b)(6).").

These "modules"—both a "proprietary" module" (Routing Patents) and a "software module" (Extraction Patents)—whether considered individually or in combination, do not amount to any technical improvement in the functioning of the system or any components. Rather, these components are used only as tools to narrow the abstract ideas of call routing and storing and extracting data. "As a matter of law, narrowing or reformulating an abstract idea does not add 'significantly more' to it." *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290-91 (Fed. Cir. 2018) ("If a claim's only 'inventive concept' is the application of an abstract idea using conventional and well-understood techniques, the claim has not been transformed into a patent-eligible application of an abstract idea.") There are no allegations in Coretek's Complaint regarding any "unconventional" features of the claims, and absent any such unconventionality, Coretek's claims are invalid.

Notably, Coretek failed to raise any allegations in its Complaint regarding any "unconventional" features of its claims, its patent does not assert any such unconventionality, and

1

its attorneys should not be permitted to raise any now through unsupported, conclusory arguments in its opposition.

I.      **ARGUMENT**

    A.      **The Routing Patents**

        1.      **The Routing Patents Fail *Alice* Step 1 Because They Are Directed to an Abstract Idea**

Coretek's assertion that the "module" in the Routing Patents "overcomes . . . specific network-centric and internet-centric technical problems" lack merit. Opp. at 6. In particular, Coretek argues that the claims, by providing a "non-abstract wireless device with a built-in proprietary applications module," are "able to unconventionally enable communications without the use of an HLR over several different protocols." *Id*. at 6-7.

A generic "module," without more, is nothing more than using a computer as a tool. Even if a module adds "a degree of particularity to the claims, the underlying concept embodied by the limitations merely encompasses the abstract idea itself." *Intellectual Ventures I LLC v. Capital One Financial Corp.*, 850 F.3d 1332, 1341 (Fed. Cir. 2017). The "proprietary applications module" referenced by Coretek is a generic computer module added to any "wireless device (WD) and/or a wireless handheld device (HS)." '512 Patent at 8:23-25. "The PAM, which "may be stored into any . . . storage device(s) and/or server(s) connected to any communications system(s)," performs the abstract idea of call routing. *Id*. at 14:53-56. The '512 Patent explains that any "individual or multiple PAM may be a part of (including an integral part of) any wireless device (WD) and/or wireless handheld device (HS)." *Id*. at 14-15:56-5. Once this PAM is installed, the device "is capable of communicating" to the "proprietary applications server manager (PASCM)." *Id*. at 8:59.

The PAM and PASCM are generic computing components that perform the abstract idea of call routing. For example, the "proprietary sub-module local call set-up option1 (LCSUO1) and the proprietary sub-module local call set-up option2 (LCSUO2)," which are sub-modules of the PAM, allow a WD/HS to "re-route" a call request, or "inform the PASCM of a" call request by

2

the WD/HS. '512 Patent, 13:3-9. A third sub-module, the "proprietary media server connection set-up sub-module," allows routing of "web browser addresses." *Id*. at 13:17-21. These communication sub-modules of the PAM re-route calls by known communication means, such as by using "GPRS or WAP," or "SMS or any such other means available in any WD and/or HS." *Id*. at 16:15-17. The PASCM monitors incoming messages, and "[i]f an incoming SMS or HTTP message is detected as being originated by a PAM as a location update SMS or HTTP message, then the PASCM proceeds to extract the identifier of the sender" and routes the call. *Id*. at 13:62-66. The PASCM, PAM, and its sub-modules are claimed using functional language that cover the use of any generic module capable of performing the abstract end result, which is the abstract idea of call routing. *See Intellectual Ventures I*, 850 F.3d 1332, 1341.

Coretek's claims are directed to the concept of call routing, not any particular implementation of the concept or even any specific or special computer components to implement the concept. As Judge Bryson, sitting by designation in the District of Delaware, noted, claims that "recite the concept, but not the way to implement it," are ineligible for patenting. *Epic IP LLC v. Backblaze, Inc.*, 351 F. Supp. 3d 733, 740 (D. Del. 2018). The claims are thus abstract.

> **2.    The Routing Patents Fail *Alice* Step 2 Because Using a "Module" To Route Calls is Not "Inventive"**

The Routing Patents add nothing new—let alone "inventive"—to network systems. The purported advance of using a "PAM" and "PASCM" is not a technical improvement of an existing system. Rather, it is using generic computer components to perform call routing by sending information over a network. *See In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d at 615; *see also buySAFE, Inc. v. Google*, Inc., 765 F.3d 1350, 1355 (Fed. Cir. 2014) ("That a computer receives and sends the information over a network—with no further specification—is not even arguably inventive."); *Intellectual Ventures I*, 850 F.3d 1332, 1341 (upholding ineligibility of claims that— "although technical sounding"—were directed to generic data types). Naming the particular modules and sub-modules, or more generally, limiting an otherwise abstract idea to a specific field of use, is a token or insignificant pre-solution activity insufficient to transform the abstract idea

3

into patent-eligible subject matter. "Most obviously, limiting the claims to [a] particular technological environment . . . is, without more, insufficient to transform them into patent-eligible applications of the abstract idea at their core." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016).

Coretek's attempt to liken its claims to those in *Enfish* lacks merit. Opp. at 17. Using a PAM, a generic computing component, to communicate with a PASCM, another generic computing component, is not an "improvement in computer capabilities," but rather "a process that qualifies as an abstract idea for which computers are invoked merely as a tool." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1336 (Fed. Cir. 2016). Under Coretek's logic, adding a computer (i.e., a PAM) to any device to communicate to a server (i.e., a PASCM) would be "inventive." "Our law demands more." *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1342 (Fed. Cir. 2017) (citing *Elec. Power Grp.*, 830 F.3d at 1356) ("[T]he claim language here provides only a result-oriented solution, with insufficient detail for how a computer accomplishes it.").

### B.     The Extraction Patents

#### 1.     The Extraction Patents Fail *Alice* Step 1 because they are Directed to an Abstract Idea

Similar to the Routing Patents, Coretek alleges that a "software module" transforms the claim into eligible under the first prong of *Alice*, removing "the claims from the realm of abstract ideas." Opp. at 15. Coretek explains that a "downloadable software module" in combination with a "dynamic return path (VoIP location)" shows that the Extraction Patents are "focused on a specific device with a specific operation, and not directed to a result or effect that is an abstract idea." *Id*. at 15-16.

Just as the PAM and PASCM are the generic components performing the abstract idea of call routing, the "software module," "dynamic return path," and "server" in the Extraction Patent are the generic components performing the abstract idea of storing and extracting data. The '575 Patent explains that, instead of relying "on the mobile network VoIP 'Routing Area'," a wireless

4

device downloads a "software module" that sends and receives data from a server. '575 Pat., 3:14-18. Specifically, the software module "at certain time intervals authenticates and connects to a server which is part of the system," and the server "simply extracts and stores the VoIP Location address in the corresponding database user data." *Id*., 8:5-6. The "VoIP return path or **also known in the industry** as PSPDN (packet switched public data network)," is an address to a public network operated by a telecommunications network, and was known in the art. *Id*., 7:20-22 (emphasis added). The VoIP return path "(i.e. the user's device VoIP location)" simply identifies the relating public network for that location. *Id*. at 1:47. The VoIP location "address is stored in VoIP Location server 100 or in external database 101 accessible to the server 100 and updated by the wireless devices" by using the "software module." *Id*. at 7:22-24.

There is simply nothing inventive about a "software module" sending and receiving data (a "VoIP return path") from a "server" over some time interval. Coretek's claims use "results-based functional language" as in *Two-Way Media*, like (1) contacting, (2) sending, and (3) routing, without "sufficiently describe[ing] how to achieve these results in a non-abstract way." *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337-38 (Fed. Cir. 2017). Notwithstanding the functional nature of the claim language, Coretek attempts to distinguish *Two-Way Media* by alleging that the software module and server communicate over "specific time intervals." Opp. at 16. Coretek is incorrect. Instead, this allegation reaffirms the abstractness of the Extraction Patents—the only purportedly inventive aspect of the invention is performance of extracting and storing data, over a "specific time interval." But sending and receiving data over some pre-determined time limit is not inventive. *See FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1095 (Fed. Cir. 2016) (affirming the finding of claims directed detecting improper access of a patient's health records "during a pre-determined time interval" as abstract).

Coretek also contends that the "ordered sequential operation" of the claim limitations "narrow [*sic*] the claim scope from the alleged abstract idea and are patent-eligible." Opp. at 15, 18. The applicants of the Extraction Patents have not described any particular mechanism for achieving the result of a less expensive, power-saving VoIP system. As discussed above, all they

5

describe is the abstract idea of storing and extracting data, and using a computer to achieve this result. The recited limitations—whether considered individually or as an ordered combination—are insufficient to add "significantly more" to the abstract idea and thus lack any "inventive concept." *See Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. at 2359-60.

Coretek's claims are directed to the concept of extracting and storing data, not any particular implementation of the concept or even any specific or special computer components to implement the concept. The claims are abstract.

### 2. The Extraction Patents Fail *Alice* Step 2 because "Identifying the VoIP Location" by Extracting and Storing Data is not "Inventive"

Similar to the Routing Patents, the Extraction Patents add nothing new—let alone "inventive"—to VoIP systems. The sole purported advance of the Extraction Patent is to provide a "VoIP enabled wireless device with a built-in downloadable software module to enable the dynamic extraction and reporting of the VoIP address or return path of the wireless device" and "reduce power consumption of the mobile device." Opp. at 2, 14. The Extraction Patents do not discuss a technical improvement, with no special programming or improved components claimed or required.

Instead, it claims a generic "software module," which does nothing more than send and receive data from a server "at certain time intervals." Connecting to "authenticate to the server of the Dynamic VoIP location system" and switching to a "power savings" mode is not inventive. '575 Pat., 3:41-46. This is the same as saying that a machine that enters into a "sleep" mode over a certain time interval of non-use would be "inventive." "Nothing in [Claim 1], understood in light of the specification, requires anything other than off-the-shelf, conventional computer, network and [processing] for gathering, sending, and presenting the desired information." *Elec. Power*, 830 F.3d at 1355. Further, there is nothing inventive about sending and receiving a VoIP return path, which is simply the user's device VoIP location. '575 Patent, 1:35-37 ("This 'return path' is what we refer to in this invention as the user's device VoIP location."). *See BSG Tech*, 899 F.3d 1281, 1290-91 ("If a claim's only 'inventive concept' is the application of an abstract idea using

6

conventional and well-understood techniques, the claim has not been transformed into a patent-eligible application of an abstract idea.").

Coretek's claims fail *Alice* step 2 because the recited limitations are insufficient to add "significantly more" to the abstract idea and is thus devoid of any "inventive concept."

### C. Patent Eligibility of the Asserted Patents Can Be Determined at the Rule 12(b)(6) Stage.

There are no factual disputes requiring resolution before the Court can rule on this § 101 issue. Coretek's reliance on *Enfish* and *Aatrix Software* lacks merit. Opp. at 20. Unlike *Enfish*, the claims at issue here are not an "improvement in computer capabilities," but rather "a process that qualifies as an abstract idea for which computers are invoked merely as a tool." *See Enfish*, 822 F.3d 1327, 1336 (Fed. Cir. 2016). And unlike *Aatrix Software*, the asserted claim elements here do not describe any unconventional components or the use of generic components in some unconventional manner, and no amount of fact discovery can change that.

Coretek seeks to "invent a factual dispute where none exists." *See T-Jat Sys. 2006, Ltd. v. Expedia, Inc.* (DE), No. CV 16-581-RGA, 2018 WL 1525496, at *6 (D. Del. Mar. 28, 2018) ("[T]here is no dispute of fact as to 'whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan.' Plaintiff makes no 'concrete allegations' to support its allegation that the 'particular characteristics' are not 'well-understood, routine, or conventional,' or inherent to translation."). Consequently, the invalidity of the Asserted Patent is a purely legal issue that should be decided now.

## II. CONCLUSION

For the foregoing reasons, Free Conferencing respectfully requests that the Court dismiss Coretek's Complaint for failure to state a claim upon which relief can be granted. Because leave to amend would be futile, Free Conferencing requests dismissal with prejudice.

|  |  |
|---|---|
| Dated: February 16, 2021 | FISH & RICHARDSON P.C. |
|  | */s/ Jeremy D. Anderson* |
|  | Jeremy D. Anderson (#4515) |
|  | 222 Delaware Avenue, 17th Floor |
|  | Wilmington, Delaware 19801 |
|  | (302) 652-5070 (Telephone) |
|  | (302) 652-0607 (Facsimile) |
|  | janderson@fr.com |
|  |  |
|  | Neil J. McNabnay |
|  | Ricardo J. Bonilla |
|  | Adil A. Shaikh |
|  | 1717 Main Street, Suite 5000 |
|  | Dallas, Texas 75201 |
|  | (214) 747-5070 (Telephone) |
|  | (214) 747-2091 (Facsimile) |
|  | mcnabnay@fr.com |
|  | rbonilla@fr.com |
|  | shaikh@fr.com |
|  |  |
|  | ***ATTORNEYS FOR DEFENDANT*** |
|  | ***FREE CONFERENCING CORPORATION*** |